**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **HEATHER SCHUMACHER,** | ) | **Case No.** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **STERIGENICS INTERNATIONAL, INC.;** | ) | **JURY TRIAL DEMANDED** |
| **STERIGENICS INTERNATIONAL LLC;** | ) | |
| **and STERIGENICS U.S., LLC;** | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441 & 1446, Defendants Sterigenics International, Inc., Sterigenics International LLC, and Sterigenics U.S., LLC (together, "Sterigenics"), hereby remove to this Court the above-styled action, pending as Case No. 2018L011006 in the Circuit Court of Cook County, Illinois ("the Action"). In support of this Notice of Removal, Sterigenics states as follows:

**I.     INTRODUCTION.**

1.     The Action is properly removed to this Court pursuant to the federal removal statute, 28 U.S.C. § 1441, because: (i) the Action is pending in the Circuit Court of Cook County, Illinois, which is within the Northern District of Illinois, Eastern Division, 28 U.S.C. § 93(a)(1); (ii) the Court has both diversity jurisdiction and original federal jurisdiction over the Action; and (iii) the procedural requirements for removal set forth in 28 U.S.C. § 1446 and 28 U.S.C. § 1453 are satisfied.

2.     More specifically, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a), because complete diversity of citizenship exists between Plaintiff Heather Schumacher

("Plaintiff") and Sterigenics. This Court also has original federal jurisdiction under 28 U.S.C. § 1331, as the Action arises under federal law.

## II.    FACTS.

3.      On October 10, 2018, Plaintiff filed her Complaint in the Circuit Court of Cook County, Illinois. A copy of the Complaint is attached as Exhibit A. The Complaint has not yet been served on Sterigenics. This case arises out of an August 21, 2018, report issued by the federal government's Agency for Toxic Substances and Disease Registry ("ATSDR") concerning emissions of ethylene oxide in Willowbrook, Illinois, where Sterigenics operates a contract sterilization facility (the "Willowbrook facility"). A copy of this report is attached as Exhibit B. The ATSDR's report was published by the U.S. Environmental Protection Agency ("USEPA") on its public-access website on August 22, 2018.[1]

### A.    Background on Sterigenics and Ethylene Oxide.

4.      Sterigenics is a leading provider of state-of-the-art sterilization services. Ethylene oxide, a gas, is a heavily regulated chemical. As detailed here, Sterigenics' use of ethylene oxide at the Willowbrook facility is subject to federal regulations promulgated by USEPA and the federal Food and Drug Administration ("FDA"), as well as Illinois regulations promulgated by the Illinois Environmental Protection Agency ("IEPA"). Sterigenics' Willowbrook facility is operating legally and in compliance with applicable regulations. Indeed, Sterigenics' Willowbrook facility not only meets federal and state standards, but exceeds them. (Declaration of Kathleen Hoffman ("Hoffman Decl.") ¶¶ 2, 5 (attached as Exhibit. C).)

---

[1] *See Evaluation of Potential Health Impacts from Ethylene Oxide Emissions*, U.S. DEP'T OF HEALTH AND HUM. SERVICES 1 (August 21, 2018), https://www.atsdr.cdc.gov/HAC/pha/sterigenic/Sterigenics_International_Inc-508.pdf.

5.       Sterigenics primarily contracts with healthcare products companies to sterilize medical devices, medical equipment, and surgical kits sold or used by those customers.  The FDA regularly inspects[2] Sterigenics' facilities, including the Willowbrook facility, given the importance of sterilization as a final step in the production and preparation of medical and surgical products in the U.S.  (*Id.* at ¶¶ 3–4.)

6.       Ethylene oxide is critical to the healthcare industry.  Over 50% of the medical devices and nearly 90% of the surgical kits[3] used in patient procedures in the U.S. are sterilized by ethylene oxide.  According to the Ethylene Oxide Sterilization Association, ethylene oxide sterilizes over 20 billion medical devices each year in the United States alone.  (*Id.* at ¶ 5.)

7.       The Willowbrook facility, like many ethylene oxide sterilization process plants, is the sole sterilization facility for a number of medical device companies in the Midwest.  On an average day, the Willowbrook facility sterilizes 1,000 cardiac devices used in heart surgery, 1,000 knee implants, 1,500 surgical procedure kits, 16,000 catheters, 11,000 syringes for injections used in radiology diagnosis, and thousands of diabetes monitoring and care kits, renal care products, neurosurgical devices, and respiratory care products.  (*Id.* at ¶ 6.)

8.       For the vast majority of single-use medical devices, complex implantable devices, and surgical kits, ethylene oxide sterilization is widely used because it is the only practical, FDA-approved sterilization method available.  While heat and radiation can sometimes be used for sterilization, those processes degrade plastics and other synthetic materials that are widely

---

[2] *See Compliance Policy Guide Section 100.550 Status and Responsibilities of Contract Sterilizers Engaged in the Sterilization of Drugs and Devices*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm073824.htm (last visited October 18, 2018).

[3] A "surgical kit" refers to the set of instruments a surgeon uses during an operation. This may include scalpels, clamps, surgical staplers, drills, and other equipment such as the sterilized gowns and drapery used during the procedure.  (Hoffman Decl. ¶ 3.)

3

used in medical devices and surgical kits, including hypodermic needles, catheters and many other common hospital and operating room equipment. (*Id.* at ¶ 8.) Without ethylene oxide sterilization, infection risks would soar dramatically in hospitals and operating rooms. (*Id.* at ¶ 7.) For heat- and irradiation-sensitive devices, no currently available sterilization method exists that has been accepted and approved as a practical replacement for ethylene oxide. (*Id.* at ¶ 9.)

9.     The Willowbrook facility is subject to stringent FDA requirements. As part of its Good Manufacturing Practices regulations, the FDA requires that medical devices and equipment be sterilized pursuant to exacting protocols that must be rigorously tested and validated.[4] Detailed procedures exist for the equipment, methods, and steps used for the ethylene oxide sterilization of each type of medical device or surgical kit at the Willowbrook facility, and that equipment is continually checked and calibrated to ensure adherence to those procedures. (*Id.* at ¶ 10.) These FDA-required validation and calibration processes are expensive and can take anywhere from four to six months to complete. (*Id.* at ¶ 11.)

10.     Moreover, it is important to understand that ethylene oxide is present in an urban atmosphere, such as the Chicago area, from a number of different sources, including natural sources as well as everyday and commercial activities. Commercial sources of ethylene oxide in the air we breathe include chemical manufacturers, hospitals, and medical sterilization facilities near where people work or live. (*Id.* at ¶¶ 13–14.) More than a dozen medical facilities located in DuPage and Cook counties exist that use ethylene oxide to sterilize medical products – Sterigenics' Willowbrook facility is far from alone. (*Id.* at ¶ 15.) As a result of all of these

---

[4] *See Compliance Policy Guide Section 100.550 Status and Responsibilities of Contract Sterilizers Engaged in the Sterilization of Drugs and Devices*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm073824.htm (last visited October 18, 2018).

natural and other sources, a general background level of ethylene oxide exists in the air. Not surprisingly, then, USEPA itself explicitly recognizes that a certain level of ethylene oxide will be present in the environment and the air we all breathe. (*Id.* at ¶ 12.)

**B.    The Release of the ATSDR Report.**

11.    On August 21, 2018, ATSDR released a report purporting to address whether ethylene oxide emissions from the Willowbrook facility pose a public health problem for people living and working in or near Willowbrook. Broadly speaking, the ATSDR report combined data gathered by USEPA with a new and controversial risk assessment used by USEPA to estimate the potential risk posed by any given concentration of ethylene oxide. (This 2016 assessment was derived pursuant to USEPA's Integrated Risk Information System ("IRIS") program.) Based on these inputs, the ATSDR report concluded that if the ethylene oxide concentrations actually represented Willowbrook area residents' exposure (*which it did not*), those residents could face potential increased cancer risks. Unfortunately, the report was released with neither context nor explanation. As noted in a letter signed by Senators Tammy Duckworth and Richard Durbin, as well as Representative Bill Foster, "[t]he lack of context has led to confusion, anxiety, and hardship on both the part of the community and Sterigenics." A copy of this letter is attached as Exhibit D.[5]

12.    During an August 29, 2018, Willowbrook town hall meeting, an ATSDR representative acknowledged that its report is "not one that indicated immediate health threat or that there was an emergency situation." (Videotape: Highlights from Village of Willowbrook, IL Town Hall Meeting (August 29, 2018) at 0:42 (to be filed as Exhibit E).) As the ATSDR

---

[5] A copy of this letter was also published on Senator Duckworth's website. *See* https://www.duckworth.senate.gov /imo/media/doc/18.09.21%20-%20Letter%20re%20Willowbrook%20ambient%20air%20testing%20request%20- %20EPA%20Wheeler%20and%20Stepp%20(002).pdf.

representative explained, its "communication strategy fell through [and] did not allow us to really put this [report] into context." (*Id.*) Willowbrook Mayor Frank Trilla attempted to allay community fears caused by the report by stating that ATSDR "took the [worst] case scenario, multiplied it by 30 years, 250 days a year, 24 hours exposure . . . and the wind had to be identical for the entire 30 years — under those circumstances 6.4 people out of 1,000 **might** be affected by this." (*Id.* at 8:20.) An ATSDR research officer also attempted to downplay concerns regarding the report by informing residents that ATSDR "biased [the results] on purpose to try to capture what might be the worst exposure in the community when they're downwind from the facility." (*Id.* at 9:55.) The ATSDR representative also admitted, "I don't know if anyone's home 24 hours a day, 7 days a week for an entire year for 33 years. Which is what we assumed." (*Id.* at 10:22.)

13.    In calculating the exposure risk in its extreme, worst-case hypothetical, ATSDR also used the highest concentration of ethylene oxide detected in the residential area samples, which were collected under non-representative weather conditions designed to yield the highest possible number. (Ex. B at p. 11.) As the ATSDR representative admitted, this concentration is **not** reflective of actual long-term exposure. In addition, ATSDR intentionally excluded from consideration 21 samples that it acknowledged reflected lower overall measured levels of ethylene oxide. (Ex. B at p. 5–7.) Importantly, the ATSDR report did **not** find Sterigenics to be in violation of any applicable USEPA or IEPA regulation or requirement. Indeed, Alec Messina, IEPA Director, stated during the August 29, 2018, town hall meeting that the Willowbrook facility is "in compliance with all the federal regulations including the emissions standards for ethylene oxide . . . . [The facility is] in compliance with those regulations and state law." (Ex. E at 3:46.)

6

C.      **Further Responses to the ATSDR Report.**

14.      Following the ATSDR report's release, William L. Wehrum, the Assistant Administrator of USEPA for Air and Radiation, attempted to provide greater clarity on the report to ease citizen concerns.  Specifically, Mr. Wehrum sent letters to Governor Bruce Rauner and several other senior elected officials specifically noting that "the air concentrations of ethylene oxide are not high enough to cause immediate harm to health for the people in and around Willowbrook."  These letters are attached as Group Exhibit F.  Further, Mr. Wehrum noted that "[e]arly indications from the post-control stack testing suggest that emissions have indeed been significantly reduced."  Mr. Wehrum also pointed out flaws underlying USEPA's recent National Air Toxics Assessment (the "2014 NATA"), which identified Willowbrook as one of a number of areas potentially having an elevated chronic risk from ethylene oxide.[6]  NATA is a screening tool used by the federal government to identify areas of the country, pollutants, or types of pollution sources that may need to be further examined to better understand potential risks to public health.  The identification of elevated risks from ethylene oxide in the 2014 NATA are primarily driven by a toxicity value taken from the 2016 IRIS assessment.  Mr. Wehrum noted that the NATA assessment's conclusion about the cancer risk of a given concentration of ethylene oxide is based on "someone who is continuously exposed to [ethylene oxide] for 24 hours per day over 70 years."

15.      Additionally, on September 20 and 21, 2018, a contractor hired by Sterigenics conducted stack tests to measure the actual emissions from the Willowbrook facility.  USEPA and IEPA experts were present to observe these tests.  USEPA will review these results and

---

[6] Although this National Air Toxics Assessment is called the "2014 NATA" because it uses emissions data from 2014, USEPA actually published the 2014 NATA in 2018.

conduct a risk assessment of the Willowbrook area. This risk assessment "will be more comprehensive than either NATA or the ASTDR analysis. It will be similar to the types of risk assessments EPA conducts when it is reviewing its regulations for industries that emit air toxics to determine whether those rules need to be updated to improve protection of public health."[7]

## III.     DIVERSITY JURISDICTION EXISTS.

16.     A defendant may remove an action from state court to federal court if the action could have been brought in federal court originally. 28 U.S.C. § 1441.

17.     Federal diversity jurisdiction exists where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and "is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Both prerequisites are satisfied here.

### A.     The Amount in Controversy Exceeds $75,000, Exclusive of Interest and Costs.

18.     A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold[;]" only when the defendant's "assertion of the amount in controversy is challenged" do the parties need to submit proof. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *Midland Mgmt. Co. v. Am. Alternative Ins. Co.*, 132 F. Supp. 3d 1014, 1018 (N.D. Ill. 2015) (same). The removing party is not required "to establish that it was likely that the plaintiff would obtain a judgment exceeding the amount-in-controversy requirement." *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 829 (7th Cir. 2011). Rather "jurisdiction will be defeated only if it appears to a legal certainty that the stakes of the lawsuit do not exceed $75,000." *Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011).

---

[7] *See* Sterigenics Willowbrook Facility – Latest Update, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, https://www.epa.gov/il/sterigenics-willowbrook-facility-latest-update (last visited Oct. 26, 2018).

19. The nature of Plaintiff's allegations demonstrate that she seeks damages in excess of $75,000. Plaintiff alleges that she is 39 years old and in 2007 was diagnosed with Hodgkin's Lymphoma. (Compl. at ¶ 15.) Plaintiff claims that since that diagnosis, she has endured numerous fertility complications. (*Id.*) According to Plaintiff, her cancer and fertility issues were caused by the Willowbrook facility's emissions of ethylene oxide. (*Id.* at ¶ 17.) Consequently, Plaintiff alleges that Sterigenics is responsible for causing her to "incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life." (*Id.* at ¶¶ 60, 66, 74, 82, 88, 96, 102, 110, 118, 124, 132, 138, 146, 154, 160.)

20. Given the nature of Plaintiff's allegations, her age, and the lack of any express limitation on the amount of damages sought, the jurisdictional amount requirement is clearly satisfied by her claims against Sterigenics.

**B.    Complete Diversity of Citizenship Exists.**

      i.     <u>The Parties are Citizens of Different States and No Defendant is a Citizen of Illinois.</u>

21. Although Plaintiff names Sterigenics International, Inc., Sterigenics International LLC, and Sterigenics U.S., LLC, only one of these companies still exists.

22. Sterigenics International LLC changed its name to Sotera Health LLC in 2017. (Declaration of Tiffany Ross Neumann ("Neumann Decl.") ¶ 3 (attached as Exhibit G).) As such, Sterigenics International LLC did not even exist at the time Plaintiff filed her Complaint.

23. Sterigenics International, Inc. converted to an LLC in 2011, and then changed its name to Sotera Health LLC in 2017. (*Id.* at ¶ 10.) As such, Sterigenics International, Inc. did not even exist at the time Plaintiff filed her Complaint.

24.     Sterigenics U.S., LLC, the only properly named Defendant, is a Delaware limited liability company whose sole member is Sotera Health LLC.  (*Id.* at ¶ 2.)

25.     Where a party is a limited liability company, "[f]or diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members. . . .  Consequently, an LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the . . . notice of removal was filed, and, if those members have members, the citizenship of those members as well."  *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007); *accord Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003) ("limited liability companies are citizens of every state of which any member is a citizen.").

26.     Sotera Health LLC is a Delaware limited liability company whose sole member is Sotera Health Holdings, LLC.  (Neumann Decl. ¶ 4.)  Sotera Health Holdings, LLC is a Delaware limited liability company whose sole member is Sotera Health Topco, Inc.  (*Id.* at ¶ 5.)

27.     Where a party is a corporation, "a corporation shall be deemed to be a citizen of every State . . . by which it is has been incorporated and of the State . . . where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

28.     Sotera Health Topco, Inc. is a Delaware corporation with its headquarters in Broadview Heights, Ohio.  (Neumann Decl. at ¶ 6.)  Consequently, Sotera Health LLC is a citizen of Delaware and Ohio.  Therefore, for the purposes of diversity jurisdiction, Sterigenics U.S., LLC is a citizen of Delaware and Ohio.

29.     Presumably naming Sterigenics International, Inc. and Sterigenics International LLC was a "misnomer," since those companies no longer exist.  *See Shaifer v. Folino*, 650 N.E.2d 594, 597 (Ill. App. Ct. 1995) ("A misnomer occurs where the plaintiff brings an action

and serves summons upon the party intended to be made the defendant, thus giving actual notice of the lawsuit to the real party in interest, but the process and complaint do not refer to the person by his correct name."). Both companies have changed their name to Sotera Health LLC, which, as mentioned previously, is a citizen of Delaware and Ohio.

30. According to the Complaint, at the time the Action was filed and at the time of this removal, Plaintiff was and is not a citizen of either Delaware or Ohio. Rather, as alleged in the Complaint, Plaintiff has been a resident of Cook County, Illinois since 2003. (Compl. at ¶ 15.) Prior to that, Plaintiff alleges that she lived in Willowbrook, Illinois from 1978 to 2002. (*Id.*) These factual allegations show that Plaintiff resides in and intends to remain in Illinois and is domiciled in this state. *See, e.g.*, *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). Domicile determines an individual's citizenship for diversity purposes. *Id.* Accordingly, for diversity purposes, Plaintiff is a citizen of Illinois.

31. Because Plaintiff is a citizen of neither Ohio nor Delaware, complete diversity of citizenship exists. *Midland Mgmt. Co.*, 132 F. Supp. 3d. at 1017 (removal based on diversity jurisdiction was proper where properly joined parties were citizens of different states).

## IV. FEDERAL QUESTION JURISDICTION.

32. Federal-question jurisdiction exists where a plaintiff's cause of action "arises under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. In order to arise under federal law, a claim must either plead a cause of action under federal law or plead a state-law claim that implicates significant federal issues. *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). A state-law claim implicates significant federal issues if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal

11

and state judicial responsibilities." *Id.* at 314. In other words, a state-law claim may satisfy the "arising under" jurisdictional test if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314); *see also Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.,* 776 F.3d 463, 466 (7th Cir. 2015). A federal issue is substantial if it requires more than the routine application of settled federal law to a particular set of facts. *See Behrens v. BMO Harris Bank , N.A.*, No. 16-CV-09949, 2017 WL 3234373, at *6 (N.D. Ill. July 31, 2017).

A.      **Plaintiff's Complaint Necessarily Raises a Disputed Issue of Federal Law.**

33.     The entire substance of Plaintiff's Complaint is founded on the federal government's ATSDR report entitled "Evaluation of the Inhalation Carcinogenicity of Ethylene Oxide," which, in turn, used *another* federal government agency's report (the 2016 USEPA IRIS) as the basis for its analysis and findings. In that 2016 report, USEPA changed ethylene oxide's cancer weight-of-evidence descriptor from "probably carcinogenic to humans" to "carcinogenic to humans" and "determined that there is sufficient evidence of a causal relationship between EtO exposure and breast cancer in women." (Ex. B, p. 1, 8, 9.)

34.     Nonetheless, at the time the report was released, and at all times before and after the report's release, Sterigenics has been in compliance with all state and federal regulatory emission requirements, most importantly the federal Clean Air Act.

35.     The Clean Air Act, 42 U.S.C. § 7401 *et seq*., is the primary mechanism through which the federal government manages air emissions from industrial facilities in the United States. Among many regulatory provisions, the Clean Air Act requires USEPA to identify sources of and set national emission standards for a specific list of nearly 200 hazardous air

pollutants.  42 U.S.C. § 7412.  Ethylene oxide is one of those chemicals, and pursuant to that

mandate, USEPA has directly regulated ethylene oxide emissions since 1994.  *See* 40 C.F.R.

§ 63, Subpart 0 (Ethylene Oxide Emissions Standards for Sterilization Facilities); National

Emission Standards for Hazardous Air Pollutants for Ethylene Oxide Commercial Sterilization

and Fumigation Operations, 59 Fed. Reg. 62585-01 (Dec. 6, 1994).  The emission standards

(known as "NESHAPs") are directly applicable to facilities such as Sterigenics and enforceable

by USEPA.  40 C.F.R. § 63.368.  If the standards are violated, the United States has the authority

to seek civil penalties of up to $97,229 per day and may obtain temporary or permanent

injunctive relief.  42 U.S.C. § 7613(b); *see also* Civil Monetary Penalty Inflation Adjustment

Rule, 83 Fed. Reg. 1190 (Jan. 10, 2018).

        36.     The Clean Air Act also creates a nationally-uniform system of permits, known as

"Title V permits," for major industrial sources to ensure that emission standards are identified

and met.  40 C.F.R. § 70.1.  USEPA sets the substantive requirements for the Title V permitting

program.  It also has the power to authorize individual states to administer the permitting

program on USEPA's behalf.  40 C.F.R. § 70 *et seq.*  USEPA has approved Illinois's Title V

permitting program, 415 ILCS 5/39.5 (known in Illinois as the Clean Air Act Permit Program

("CAAPP"); Illinois, 66 Fed. Reg. 62946 (Dec. 4, 2001) (Clean Air Act Final Full Approval of

the Operating Permits Program).  Pursuant to this grant of authority, IEPA issued Sterigenics a

CAAPP permit.

        37.     Together, the dual regulations set by USEPA and IEPA limit Sterigenics' overall

use of ethylene oxide and require most sources of ethylene oxide at the facility to be connected

to pollution control devices, which are required to remove at least 99% of the ethylene oxide

before it can be emitted to the air, pursuant to the federal NESHAP.  40 C.F.R. § 63.362(a).

Sterigenics is in compliance with its CAAPP permit and the federal NESHAP and, in fact, emits far less than the permitted amount of ethylene oxide.

38.     Nonetheless, Plaintiff argues that Sterigenics owed "a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility." (Compl. at ¶¶ 56, 92, 128.) Plaintiff lists a number of ways in which Sterigenics may have breached this duty to Plaintiff and the Willowbrook community, including "[b]y emitting [ethylene oxide] into the air from its Willowbrook facility," "[b]y using [ethylene oxide] as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being," and "[b]y failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate [ethylene oxide] emission from its Willowbrook facility." (*Id.* at ¶¶ 58, 94, 130.)

39.     In alleging this duty to both Plaintiff and the Willowbrook community generally, Plaintiff seeks to substitute a different standard of care for the carefully-designed emission standard for ethylene oxide that was authorized by Congress, established by USEPA, and implemented in a federally-approved CAAPP permit. Plaintiff's Complaint is a direct challenge to both the Clean Air Act's ethylene oxide standards as well as IEPA's implementation of those standards. Plaintiff asks the state court to ignore these uniform federal standards, and impose new and different standards primarily based on USEPA's IRIS report. Thus, not only does Plaintiff ask the state court to rewrite a federal regulation, they seek to do that based on a report generated by one federal agency—ATSDR—at the behest of another federal agency—USEPA. Given Plaintiff's direct challenge to federal standards, regulations and enforcement, as well as

her reliance on federal agency opinions to state a claim, the Complaint necessarily raises a disputed issue of federal law as to the governing the standards for ethylene oxide emissions.

**B.    Plaintiff's Complaint Raises a Substantial Federal Issue.**

40.    Plaintiff's claims are substantial because their resolution is important to the federal system as a whole. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole."). The federal government has a strong interest in ensuring uniformity in national air quality standards. This interest is evidenced by the highly comprehensive and detailed regulatory system the federal government has set forth through the Clean Air Act. Sterigenics is in compliance with this comprehensive and detailed federal regulatory system. Plaintiff, however, is attempting to bypass this federal system and separately regulate Sterigenics' conduct, conduct that is in conformance with federal and state environmental laws. Curiously, Plaintiff's proposed regulations are taken from assessments issued by federal bodies—ATSDR and USEPA's IRIS program.

41.    Notably, the standard of care outlined in both the ATSDR report and the IRIS assessment is at odds with the USEPA's federal regulations. Perhaps most troubling is the fact that USEPA created the IRIS risk assessment. Ethylene oxide emitters are receiving inconsistent messages from *the same federal agency*. Thus, Plaintiff's case presents an issue that cries out for federal, not state, jurisdiction. Overall, the federal government's direct and substantial interest in this matter demonstrates it is an important issue of federal law that belongs in this Court.

**C.    Resolution of this Substantial Federal Issue in This Court Is Not Disruptive.**

42.    Finally, this case does not present issues traditionally regulated by the States. *See Gunn*, 568 U.S. at 264 (denying removal of a legal malpractice case based, in part, on the fact

15

that States "have a special responsibility for maintaining standards among members of the licensed professions") (internal quotation mark omitted).  Instead, Plaintiff's case is premised on inconsistent *federal* messages, which the State of Illinois has no particular interest in resolving. Consequently, Plaintiff's claims are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Id.* at 258.

43.     Because this case meets the arising under standards set by the Supreme Court in *Grable*, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

## V.    THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.

44.     This Court is the proper venue for this Action, because it is pending in the Circuit Court for Cook County, Illinois, and the United States District Court for the Northern District of Illinois is the federal court district embracing the geographic place where the Action is pending. 28 U.S.C. §§ 93(a)(1), 1441(a), 1446(a).

45.     The Complaint was filed in the Circuit Court of Cook County on October 10, 2018.  This Complaint has not yet been served on Sterigenics.  Under 28 U.S.C. § 1446(b), this Notice of Removal is both timely and proper.  *See* 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, ***through service or otherwise***, of a copy of the initial pleading . . . .") (emphasis added); *see also Brown v. Fifth Third Bank*, No. 12 C 2981, 2012 WL 6680317, at *4 n.2 (N.D. Ill. Dec. 20, 2012) (holding that Defendant's "removal was timely even though it had not been properly served at the time of removal").

46.     In compliance with 28 U.S.C. § 1446(a), this Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

47.     No Defendant properly joined to this case is a citizen of the State of Illinois, the state where the Action was initially filed.  28 U.S.C. § 1441(b)(2).

48.     Pursuant to 28 U.S.C. § 1446(d), Sterigenics will promptly file a removal notice with the Clerk of the Circuit Court of Cook County, Illinois, and will serve written notice of the same upon counsel of record for Plaintiffs.

49.     If any questions arise about this removal, Sterigenics respectfully requests the opportunity to present briefing and oral argument in support of removal, and to conduct jurisdictional discovery, if needed.

50.     By filing this notice of removal, Sterigenics does not waive, either expressly or implicitly, its rights to assert any defense or other objection that it could have asserted in the Circuit Court of Cook County of Illinois, including, without limitation, those related to personal jurisdiction, inconvenience of the forum, venue, or joinder.

## REQUESTED RELIEF

WHEREFORE, Defendants Sterigenics International, Inc., Sterigenics International LLC, and Sterigenics U.S., LLC, respectfully requests that this Court assume jurisdiction over this action.

Date:   October 26, 2018                Respectfully submitted,

                                        By:   _/s/ *Maja C. Eaton*_____
                                              Maja C. Eaton

                                              Maja C. Eaton
                                              meaton@sidley.com
                                              Gerard D. Kelly
                                              gkelly@sidley.com
                                              Elizabeth M. Chiarello
                                              echiarello@sidley.com
                                              Michael L. Lisak
                                              mlisak@sidley.com
                                              Stephanie C. Stern
                                              sstern@sidley.com
                                              SIDLEY AUSTIN LLP
                                              Firm ID No. 42418
                                              One South Dearborn Street
                                              Chicago, Illinois  60603
                                              Telephone: (312) 853-7000
                                              Facsimile:  (312) 853-7036

                                              ***ATTORNEYS FOR
                                              STERIGENICS
                                              INTERNATIONAL, INC.,
                                              STERIGENICS
                                              INTERNATIONAL LLC, AND
                                              STERIGENICS U.S., LLC***

CIRCUIT COURT OF COOK COUNTY
LAW DIV., RM. 801 DALEY CTR.
CHICAGO, IL. 60602


ID: LD2018L011006    20181017000002
AT: HART MCLAUGHLIN &ELDRIDGE LL
TO: BELDRIDGE@HMELEGAL.COM

              * * * * *  N O T I C E  * * * * *

                  CASE  18-L-011006


 SCHUMACHER HEATHER       V.       STERIGENICS INTERNATIONAL
 THERE WILL BE A CASE MANAGEMENT CALL OF YOUR CASE ON THURSDAY
 THE 13TH DAY OF DECEMBER IN ROOM 2210 AT  9:00 A.M. AT THE
 DALEY CENTER COURT HOUSE, 50 WEST WASHINGTON STREET, CHICAGO, IL

FILED
10/10/2018 5:27 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011006

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| HEATHER SCHUMACHER, | ) | |
| | ) | |
| | ) | Case No. **2018L011006** |
| Plaintiff, | ) | |
| | ) | **JURY DEMANDED** |
| v. | ) | |
| | ) | |
| STERIGENICS INTERNATIONAL, INC.; | ) | |
| STERIGENICS INTERNATIONAL LLC; | ) | |
| STERIGENICS U.S., LLC; | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT AT LAW

---

Plaintiff, HEATHER SCHUMACHER, by and through counsel, Romanucci &
Blandin, LLC, and Hart McLaughlin & Eldridge LLC, states as follows for her
complaint against Defendants STERIGENICS INTERNATIONAL, INC.,
STERIGENICS INTERNATIONAL LLC, STERIGENICS U.S. LLC (collectively
"Sterigenics").

FILED DATE: 10/10/2018 5:27 PM   2018L011006

1

FILED DATE: 10/10/2018 5:27 PM   2018L011006

## INTRODUCTION

For decades, tens of thousands of people have lived in the quiet suburbs of Cook and DuPage County: Willowbrook, Burr Ridge, Darien, and Hinsdale with the false belief that they had found a sanctuary from the busy streets of Chicago. Just 25 miles southwest of Chicago, the third largest city in America, the area is a disaster zone. It is America's Chernobyl. In 1984, a company called Sterigenics infiltrated the Willowbrook community and began emitting an invisible, cancer causing toxin, ethylene oxide. In 2011, this company was purchased by a Cook County Hedge Fund, GTCR, LLC. The emissions continued. It was not until August 21, 2018, when the U.S. Department of Health & Human Services released a report, that the veil was finally lifted on the staggering cancer statistics and other ailments running rampant in these quiet communities. With the cancer-causing effects of ethylene oxide being studied since the 1940s, America's Chernobyl has been nearly 80 years in the making and it affects our children, our parents, and our grandparents. This is about the children our community may never have. It is about lives cut short, dreams destroyed, and memories never made.

## OVERVIEW

1.      Since 1984, Sterigenics has been emitting ethylene oxide ("EtO"), a known carcinogen, into the air from its facility located in Willowbrook, Illinois. As a result, for the last 34 years, those who live and work in Willowbrook and the surrounding area have unknowingly been inhaling EtO in the air they breathe on a routine and continuous basis.

FILED DATE: 10/10/2018 5:27 PM    2018L011006

2.      Sterigenics never informed the residents of the Willowbrook community or those who live or work nearby that it systematically emits EtO into the air, nor did Sterigenics warn them that they were and continue to routinely and continuously breathing in a known carcinogen.

3.      On or about August 21, 2018, an "Evaluation of Potential Health Impacts for Ethylene Oxide Emissions" prepared by the U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry (hereinafter "ATSDR"), was released to the general public.[1] The ATSDR report was based upon air measurements of EtO collected in May 2018 from 29 discrete locations near the Sterigenics facility in Willowbrook.

4.      Relative to the Sterigenics facility in Willowbrook, the ATSDR concluded that "residents and workers are exposed to elevated airborne EtO concentrations from facility emissions." The ATSDR further concluded that "*an elevated cancer risk exists* for residents and off-site workers in the Willowbrook community surrounding the Sterigenics facility," and that "[t]hese elevated risks *present a public health hazard to these populations*." Among other things, the ATSDR Evaluation "recommends that Sterigenics take *immediate action* to reduce EtO emissions at this facility."

5.      According to the EPA, the upper limit of acceptable cancer risk for airborne toxins, such as EtO, is 1 in 10 thousand (or 100 in 1 million). In other words, according to the EPA, it "will generally presume that if the risk to that individual is

---

[1] https://www.atsdr.cdc.gov/HAC/pha/sterigenic/Sterigenics_International_Inc-508.pdf

3

FILED DATE: 10/10/2018 5:27 PM   2018L011006

no higher than approximately 1 in 10 thousand, that risk level is considered acceptable . . ."[2]

6.      Based upon the EPA's 2014 National Air Toxics Assessment, there are 106 census tracts in the United States with cancer risk scores greater than the acceptable limits. Most of those 106 tracts are located in "Cancer Alley," which is a notorious area along the Mississippi River between Baton Rouge and New Orleans with numerous industrial plants.

7.      According to the EPA's 2014 measurements, the immediate area in DuPage County surrounding the Sterigenics facility in Willowbrook, referred to as Tract 17043845902, has a cancer risk of 281.8075 in 1 million—which is nearly three times higher than the EPA's acceptable limits.

8.      To put this into further context, the EPA's 2014 National Air Toxics Assessment documented cancer risks in **76,727** census tracts across the country. The Willowbrook Tract, 1704385902, has the highest cancer risk in Illinois and the nineteenth (19th) highest cancer risk in the United States. In other words, the Willowbrook Tract is in the top 99.98% tracts in terms of cancer risk in the country.

9.      Figure 1, below, identifies the nineteen census tracts in the United States with the highest cancer risk. Twelve are located along Cancer Alley. Five tracts have sterilization plants, such as Sterigenics, that emit massive amounts of EtO. In fact, sterilization plants are almost entirely responsible for causing the

---

[2] https://www.epa.gov/national-air-toxics-assessment/nata-frequent-questions

4

FILED DATE: 10/10/2018 5:27 PM    2018L011006

extraordinarily high cancer risks in DuPage County, Illinois, Jefferson County, Colorado, and Lehigh County, Pennsylvania.

### Figure 1

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | State | EPA Region | County | FIPS | Tract | Population | Total Cancer Risk (per million) |
| 2 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070800 | 2,537 | 1,505.1167 |
| 3 | LA | EPA Region 6 | St. Charles | 22089 | 22089060100 | 1,937 | 808.7227 |
| 4 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070900 | 3,115 | 616.6193 |
| 5 | PA | EPA Region 3 | Lehigh | 42077 | 42077005902 | 1,571 | 596.4609 |
| 6 | CO | EPA Region 8 | Jefferson | 08059 | 08059010902 | 2,310 | 525.5596 |
| 7 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070700 | 4,348 | 511.3240 |
| 8 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071000 | 2,840 | 490.2785 |
| 9 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095000000 | 45,924 | 413.3152 |
| 10 | WV | EPA Region 3 | Kanawha | 54039 | 54039013400 | 2,222 | 366.6597 |
| 11 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071100 | 3,398 | 363.1912 |
| 12 | TX | EPA Region 6 | Harris | 48201 | 48201343100 | 4,629 | 348.2016 |
| 13 | PA | EPA Region 3 | Lehigh | 42077 | 42077000101 | 3,661 | 346.5181 |
| 14 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070500 | 6,229 | 329.2657 |
| 15 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070100 | 2,685 | 303.0079 |
| 16 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070300 | 6,258 | 296.3112 |
| 17 | TX | EPA Region 6 | Harris | 48201 | 48201343200 | 4,944 | 296.1831 |
| 18 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070400 | 4,381 | 286.5417 |
| 19 | LA | EPA Region 6 | St. Charles | 22089 | 22089062700 | 4,753 | 284.5145 |
| 20 | IL | EPA Region 5 | DuPage | 17043 | 17043845902 | 3,411 | 281.8075 |

10. With particular respect to the Willowbrook Tract, 88.98% of the elevated cancer risk is attributed to EtO emissions; and the only facility in the Willowbrook Tract emitting EtO is Sterigencis. As a result, Sterigenics alone is almost entirely responsible for the Willowbrook Tract having the 19th highest cancer risk in the country.

11. Most troubling is that only one facility in the entire country emits more EtO than the Sterigenics facility in Willowbrook.

12. The data cited above, specifically in Paragraphs 6 through 11, is based on sampling from 2014. More recent data, however, reveals that the cancer risk in Willowbrook is far higher than previously determined. In May 2018, air samples were

5

FILED DATE: 10/10/2018 5:27 PM    2018L011006

taken and analyzed from the area surrounding the Sterigenics facility in Willowbrook. Those samples revealed a **current** cancer risk of 6,400 in 1 million (or 64 in 10 thousand), which is **64 times the acceptable limit**.

13.     As a direct and proximate result of Sterigenics' emissions of EtO over the course of the last 34 years, the Willowbrook community has become one of the most toxic and one of the most dangerous communities from a health and well-being standpoint in the entire country. Those who live and work in the Willowbrook area have been victimized by Sterigenics' negligent acts and omissions, as well as its conscious disregard and utter indifference to human life and the health and well-being of those in the community.

14.     Neither the extent of Sterigenics' EtO emissions nor the impact of those emissions on the health and well-being of those who live and work in the Willowbrook area was known by the general public until the August 21, 2018 release of the ATSDR report and the August 22, 2018 release of EPA's 2014 National Air Toxics Assessment.

## PARTIES

15.     Plaintiff, Heather Schumacher, is 39 years old and has been a resident of Cook County, Illinois since approximately 2003. From 1978 until 2002, Ms. Schumacher lived just over one-third of a mile from the Sterigenics facility in Willowbrook, Illinois. In 2007, Ms. Schumacher was officially diagnosed with Hodgkin's Lymphoma and has since endured numerous fertility complications, all of which have taken place in Cook County, Illinois.

FILED DATE: 10/10/2018 5:27 PM    2018L011006

16.     All of Ms. Schumacher's treatment was completed in Cook County, Illinois.

17.     Ms. Schumacher did not have notice that her cancer and fertility issues were wrongfully caused or that they were caused by Sterigenics' emissions of EtO until the recent ATSDR report was released in August 2018.

18.     Sterigenics International, Inc. and Sterigenics International, LLC provide contract sterilization services across the world. Together they operate 46 facilities in 13 countries.

19.     In 2011, Sterigenics International, Inc. was purchased for $675 million by the Chicago-based private equity firm, GTCR, LLC. The Chairman of GTCR in 2011 was Governor Bruce Rauner.

20.     Subsequently, in 2017, Sterigenics International LLC announced that it had changed its parent name to Sotera Health LLC. Sotera Health LLC is also owned in part by GTCR, Governor Rauner's former equity firm.

21.     Sterigenics U.S., LLC, is a publicly-traded subsidiary of Sotera Health LLC, with its headquarters and principal place of business located at 2015 Spring Road, Suite 650, Oak Brook, Illinois 60523.

22.     At all times relevant for the time period referenced herein, GTCR, LLC, owned, operated, managed, and/or maintained Sterigenics, with its principal place of business at 300 N. LaSalle Street, Suite 5600, Chicago, Cook County, IL.

23.     Sterigenics operates two buildings in Willowbrook. Building One is located at 7775 S. Quincy Street and Building Two is located at 830 Midway Drive.

FILED DATE: 10/10/2018 5:27 PM    2018L011006

24.     During the times relevant for the time period referenced herein, Sterigenics operated another facility at 711 Cooper Court, Schaumburg, Cook County, Illinois.

## VILLAGE OF WILLOWBROOK

25.     The Village of Willowbrook is a suburban community located roughly 20 miles southwest of Chicago. Its population is approximately 8,500. The Village owns and operates over 54 acres of parks on 10 separate sites throughout the Village.

26.     The two Sterigenics buildings in Willowbrook—Building One and Building Two—are both located in a densely populated metropolitan area with 19,271 people living within one mile.

27.     Gower Middle School in Burr Ridge is located 0.7 miles from the Sterigenics facility, and has an enrollment of approximately 400 students. Gower West Elementary School is 0.9 miles from the Sterigenics facility. Conev's Cradle Infant Care, Inc., is a daycare center located 0.7 miles from the Sterigenics facility. Hinsdale South High School, with an enrollment of 1,500 students, is located 1.1 miles from the Sterigenics facility.

28.     The Willowbrook Police Department, with its 23 full-time sworn police officers and three civilian employees, is located a mere 495 feet from the Sterigenics facility. Willowbrook's Village Office and City Hall is located 0.2 miles from the Sterigenics facility.

29.     The Willowbrook Community Park is 0.6 miles from the Sterigenics facility. And there are highly dense residential areas to the immediate west of the

FILED DATE: 10/10/2018 5:27 PM    2018L011006

Sterigenics facility within 0.3 miles, to the southeast within 0.6 miles, to the southwest within 0.9 miles, to the north within 0.7 miles, to the northeast within 0.8 miles, and to the east within 1.0 mile.

30.    Willowbrook Town Center, which is located 1.1 miles from the Sterigenics facility, has nearly 200,000 square feet of retail stores, restaurants, and other businesses. There are 91,000 residents within a three-mile radius of the Willowbrook Town Center, and an additional 33,000 people employed in the area's 3,000-plus businesses.

31.    Figure 2, below, depicts the area within a 1.5 mile radius of the Sterigenics facility.

**Figure 2**



FILED DATE: 10/10/2018 5:27 PM   2018L011006

## ETHYLENE OXIDE

32.    The DNA damaging properties of EtO have been studied since the 1940s, and for more than 40 years it has been consistently recognized as dangerous, toxic, and carcinogenic.

33.    In a 1977 report, the National Institute for Occupational Safety and Health ("NIOSH") concluded that occupational exposure to EtO may increase the frequency of mutations in human populations and recommended that EtO be considered as mutagenic and potentially carcinogenic to humans. Given EtO's carcinogenic potential, the 1977 NIOSH report also recommended that alternative sterilization processes be used whenever available.

34.    In 1981, NIOSH released a new bulletin focusing on new evidence of carcinogenic, mutagenic, and reproductive hazards associated with EtO. It also reiterated that EtO was a potential occupational carcinogen and reported that no safe levels of EtO exposure have been demonstrated.

35.    In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as *reasonably anticipated to be a human carcinogen.*

36.    In 2000, the U.S. Department of Health and Human Services published the Ninth Annual Report on Carcinogens and revised its classification for EtO to *known to be a human carcinogen.*

37.    The World Health Organization's International Agency for Research on Cancer has also elevated EtO to a Group 1 carcinogen, finding, "Ethylene Oxide is carcinogenic to humans."

38.    In 2016, the U.S. EPA's Integrated Risk Information System (IRIS) increased the cancer potency of EtO by 30 times.

39.    The half-life of EtO in the atmosphere has been reported in certain circumstances to be two-hundred eleven (211) days. Neither rain nor absorption into aqueous aerosols is capable of removing ethylene oxide from the atmosphere.

40.    Acute exposure to EtO can result in nausea, vomiting, neurological disorders, bronchitis, pulmonary edema, and emphysema.

41.    Chronic exposure to EtO can irritate the eyes, skin, nose, throat, lungs, and can cause harm to the brain and nervous system leading to headaches, nausea, memory loss, and numbness.

42.    Chronic inhalation exposure to EtO can also cause reproductive and developmental impairments. Evidence recognized by the EPA indicates that inhalation exposure to EtO can cause an increased rate of miscarriages in females. Evidence also indicates that EtO inhalation exposure can cause decreased sperm concentration and testicular degeneration.

43.    Additionally, inhalation exposure to EtO can cause mutations and chromosomal damage that can lead to birth defects and cancer. Even when exposure to EtO diminishes or ceases, the frequency of sister chromatid exchanges

11

FILED DATE: 10/10/2018 5:27 PM   2018L011006

(mutations/chromosomal alterations) have been found to remain elevated for at least six months.

44.     Chronic inhalation exposure to EtO also causes cancer. Evidence recognized by the EPA indicates that inhalation exposure to EtO causes lymphatic cancers, leukemia, and Hodgkin's lymphoma. There is also evidence that EtO causes brain cancer, lung cancer, and uterine cancer. **As a result, the EPA has concluded that EtO is carcinogenic to humans by the inhalation route of exposure.** The stated confidence in this classification is "HIGH."

## STERIGENICS' OPERATIONS

45.     Sterigenics and its predecessors have been releasing EtO into the air in the Willowbrook area since 1984. The facility stores EtO and sprays it into gas chambers to sterilize medical equipment and pharmaceuticals. Building One of the Sterigenics facility, which was constructed in 1984, holds fifteen gas chambers, while Building Two, which was constructed in 1999, holds four gas chambers. Vents on the gas chambers have been and, upon information and belief, remain uncontrolled. This means that EtO is released from the nineteen gas chambers, through the vents, and into the Willowbrook air without any pollution controls.

46.     The Sterigenics facility operates 24 hours per day, which means toxic, cancerous gas is emitted from the Sterigenics facility on a steady and continuous basis. As a result, EtO is a constant element in the air breathed by those who live and work near the Willowbrook facility.

47.    From 1995 through 2016, the reported EtO emissions from the Sterigenics facility are depicted in Figure 3, below:

**Figure 3**

| Year | Pounds | | Year | Pounds |
|------|--------|-|------|--------|
| 1995 | 18,213 lbs. | | 2006 | 3,985 lbs. |
| 1996 | 22,000 lbs. | | 2007 | 3,698 lbs. |
| 1997 | 26,000 lbs. | | 2008 | 3,597 lbs. |
| 1998 | 31,000 lbs. | | 2009 | 3,429 lbs. |
| 1999 | 1,440 lbs. | | 2010 | 6,869 lbs. |
| 2000 | 7,341 lbs. | | 2011 | 6,878 lbs. |
| 2001 | 7,848 lbs. | | 2012 | 6,811 lbs. |
| 2002 | 6,686 lbs. | | 2013 | 5,892 lbs. |
| 2003 | 6,630 lbs. | | 2014 | 5,036 lbs. |
| 2004 | 5,039 lbs. | | 2015 | 4,706 lbs. |
| 2005 | 2,621 lbs. | | 2016 | 4,009 lbs. |

48.    No data on ambient air emissions was kept before 1995. Therefore, from 1984 to 1994, it is not definitively known without discovery from Sterigenics as to how many pounds of EtO Sterigenics released into the air. However, in the few years thereafter, from 1995 to 1998, Sterigenics released an average of 24,203 pounds of EtO into the atmosphere from its Willowbrook facility. It is therefore reasonable to conclude that the pre-1995 emissions of EtO were similar to those from 1995 to 1998.

49.    At all relevant times, Sterigenics has known or should have known that EtO is toxic and dangerous to human health and well-being. In addition, at all relevant times, Sterigenics has known or should have known that EtO is classified as a carcinogen and has been determined to cause various illnesses and ailments including, but not limited to, cancer.

FILED DATE: 10/10/2018 5:27 PM 2018L011006

50.     Sterigenics has also been the subject of regulatory and administrative enforcement relative to its EtO emissions. Beginning in 1992, Sterigenics operated a sterilization facility in Zoetermeer, a city in the western Netherlands. The Zoetermeer facility was located in an area with residential housing and numerous small business. In 2009, it was determined that Sterigenics had been knowingly releasing too much EtO into the air for a number of years and was penalized. Sterigenics, however, continued with its excessive emissions until it was ultimately shut down in 2010. According to the Public Prosecutor in Zoetermeer, Sterigenics knew of the unauthorized emissions, but failed to act and did not warn local residents about the emissions or the dangers associated therewith.

51.     On or about October 7, 2013, Sterigenics released ethylene glycol (which is made from EtO) into the soil and groundwater at its Willowbrook facility. In addition, on October 21, 2013, Sterigenics reported the uncontrolled release of 30 pounds of ethylene oxide into the air from its Willowbrook facility. The Illinois Attorney General filed a lawsuit against Sterigenics for its water and air pollution and alleged numerous violations of environmental statutes and regulations. Sterigenics entered into a consent order whereby it agreed to pay a $50,000.00 fine.

52.     Notwithstanding Sterigenics' knowledge concerning the dangers of operation, it has been emitting EtO from its facility in Willowbrook on a routine and constant basis for 34 years. Further, notwithstanding Sterigenics' knowledge that chronic inhalation exposure to EtO causes adverse conditions to the eyes, skin, nose, throat, lungs, and nervous system, reproductive and developmental impairments,

14

FILED DATE: 10/10/2018 5:27 PM    2018L011006

mutations, chromosomal damage, birth defects, and cancer, it has failed to warn those who live and work in the Willowbrook area that they are being exposed to and breathing in EtO on a routine and constant basis.

## COUNT I
## Negligence – Sterigenics International, Inc.

53.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 as if fully set forth as Paragraph 53.

54.    Sterigenics International, Inc. owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

55.    Sterigenics International, Inc. managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

56.    Sterigenics International, Inc. had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

57.    At all relevant times, Sterigenics International, Inc. knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

58.    Sterigenics International, Inc. breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

   a.  By emitting EtO into the air from its Willowbrook facility;

FILED DATE: 10/10/2018 5:27 PM    2018L011006

b. By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

c. By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

d. By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

e. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

f. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

g. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

59.     As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

60.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

## COUNT II
**Willful and Wanton Conduct – Sterigenics International, Inc.**

61.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 54 and 55 as if fully set forth as Paragraph 61.

62.     Sterigenics International, Inc. had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

17

FILED DATE: 10/10/2018 5:27 PM    2018L011006

63.    At all relevant times, Sterigenics International, Inc. knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

64.    Sterigenics International, Inc. breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.  By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b.  By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

    c.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    d.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    e.  By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

    f.  Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

    g.  By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

65.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

66.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

### COUNT III
**Ultrahazardous Activity / Strict Liability – Sterigenics International, Inc.**

67.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 54 and 55 as if fully set forth as Paragraph 67.

68.    Sterigenics International, Inc.'s use and emission of EtO from its Willowbrook facility constitutes an ultrahazardous activity.

69.    Sterigenics International, Inc.'s use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

19

70.    Sterigenics International, Inc.'s use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

71.    While the activities conducted by Sterigenics International, Inc. are exceedingly dangerous, it offers little to no value to the surrounding community.

72.    Because the activities of Sterigenics International, Inc. are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

73.    As a direct and proximate result of Sterigenics International, Inc.'s ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

74.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

## COUNT IV
### Civil Battery – Sterigenics International, Inc.

75.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 54 and 55 as if fully set forth as Paragraph 75.

FILED DATE: 10/10/2018 5:27 PM    2018L011006

76.    At all relevant times, Sterigenics International, Inc. knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

77.    Notwithstanding this knowledge, Sterigenics International, Inc. caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

78.    Plaintiff's contact with EtO was offensive and harmful.

79.    Sterigenics International, Inc. intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

80.    Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

81.    As a direct and proximate result of Sterigenics International, Inc.'s emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

82.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

2018L011006

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

## COUNT V
### Public Nuisance – Sterigenics International, Inc.

83. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 54 and 55 as if fully set forth as Paragraph 83.

84. The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

85. Sterigenics International, Inc.'s use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics International, Inc. has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

86. Sterigenics International, Inc.'s use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

87. As a result of Sterigenics Interntational, Inc.'s use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

FILED DATE: 10/10/2018 5:27 PM    2018L011006

88.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

## COUNT VI
### Negligence – Sterigenics International LLC

89.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 as if fully set forth as Paragraph 89.

90.     Sterigenics International LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

91.     Sterigenics International LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

92.     Sterigenics International LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

93.     At all relevant times, Sterigenics International LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a

23

FILED DATE: 10/10/2018 5:27 PM    2018L011006

toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

94.    Sterigenics International LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

    a.  By emitting EtO into the air from its Willowbrook facility;

    b.  By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

    c.  By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

    d.  By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

    e.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

    f.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

    g.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

    h.  By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

    i.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

FILED DATE: 10/10/2018 5:27 PM    2018L011006

j.   By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k.   By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

95.   As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

96.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

## COUNT VII
### Willful and Wanton Conduct – Sterigenics International LLC

97.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 90 and 91 as if fully set forth as Paragraph 97.

98.   Sterigenics International LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of

25

FILED DATE: 10/10/2018 5:27 PM    2018L011006

Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

99.    At all relevant times, Sterigenics International LLC knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

100.    Sterigenics International LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

a.   By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

b.   By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

c.   By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d.   By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

e.   By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

f.   Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

26

FILED DATE: 10/10/2018 5:27 PM   2018L011006

      g.  By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

101.   As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

102.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

## COUNT VIII
### Ultrahazardous Activity / Strict Liability – Sterigenics International LLC

103.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 90 and 91 as if fully set forth as Paragraph 103.

104.   Sterigenics International LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

105.   Sterigenics International LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the

likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

106. Sterigenics International LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

107. While the activities conducted by Sterigenics International LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

108. Because the activities of Sterigenics International LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

109. As a direct and proximate result of Sterigenics International LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

110. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

FILED DATE: 10/10/2018 5:27 PM    2018L011006

## COUNT IX
### Civil Battery – Sterigenics International LLC

111. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 90 and 91 as if fully set forth as Paragraph 111.

112. At all relevant times, Sterigenics International LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

113. Notwithstanding this knowledge, Sterigenics International LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

114. Plaintiff's contact with EtO was offensive and harmful.

115. Sterigenics International LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

116. Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

117. As a direct and proximate result of Sterigenics International LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

118. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills,

29

FILED DATE: 10/10/2018 5:27 PM   2018L011006

lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

## COUNT X
### Public Nuisance – Sterigenics International LLC

119.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 90 and 91 as if fully set forth as Paragraph 119.

120.   The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

121.   Sterigenics International LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics International LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing an substantially elevated risk of cancer.

122.   Sterigenics International LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

123.   As a result of Sterigenics International LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

FILED DATE: 10/10/2018 5:27 PM   2018L011006

124.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact

## COUNT XI
### Negligence – Sterigenics U.S., LLC

125.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 as if fully set forth as Paragraph 125.

126.   Sterigenics U.S., LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

127.   Sterigenics U.S., LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

128.   Sterigenics U.S., LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

129.   At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous,

FILED DATE: 10/10/2018 5:27 PM   2018L011006

and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

130.    Sterigenics U.S., LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

a.  By emitting EtO into the air from its Willowbrook facility;

b.  By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

c.  By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

d.  By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

e.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

f.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

g.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h.  By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-

FILED DATE: 10/10/2018 5:27 PM    2018L011006

being of those who live and work in the Willowbrook community; and

k. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

131.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

132.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XII
### Willful and Wanton Conduct – Sterigenics U.S., LLC

133.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 126 and 127 as if fully set forth as Paragraph 133.

134.    Sterigenics U.S., LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

33

FILED DATE: 10/10/2018 5:27 PM   2018L011006

135. At all relevant times, Sterigenics U.S., LLC knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

136. Sterigenics U.S., LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a. By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b. By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

    c. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    d. By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    e. By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

    f. Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

    g. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

137.   As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

138.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XIII
### Ultrahazardous Activity / Strict Liability – Sterigenics U.S., LLC

139.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 126 and 127 as if fully set forth as Paragraph 139.

140.   Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

141.   Sterigenics U.S., LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

FILED DATE: 10/10/2018 5:27 PM    2018L011006

142. Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

143. While the activities conducted by Sterigenics U.S., LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

144. Because the activities of Sterigenics U.S., LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

145. As a direct and proximate result of Sterigenics U.S., LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

146. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XIV
### Civil Battery – Sterigenics U.S., LLC

147. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 126 and 127 as if fully set forth as Paragraph 147.

FILED DATE: 10/10/2018 5:27 PM   2018L011006

148.   At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

149.   Notwithstanding this knowledge, Sterigenics U.S., LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

150.   Plaintiff's contact with EtO was offensive and harmful.

151.   Sterigenics U.S., LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

152.   Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

153.   As a direct and proximate result of Sterigenics U.S., LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

154.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XV
## Public Nuisance – Sterigenics U.S., LLC

155.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 and 126 and 127 as if fully set forth as Paragraph 155.

156.    The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

157.    Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics U.S., LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing an substantially elevated risk of cancer.

158.    Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

159.    As a result of Sterigenics U.S., LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

160.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Hodgkin's lymphoma and fertility issues which

38

have caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Heather Schumacher, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XVI
### Injunctive Relief – All Defendants

161. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52 as if fully set forth as Paragraph 161.

162. Defendants have a duty to not pollute the air surrounding the Sterigenics facility in Willowbrook with EtO.

163. Defendants have breached their duty by emitting EtO from Sterigenics Willowbrook facility on a routine and continuous basis.

164. Defendants' current emissions of EtO from the Sterigenics facility in Willowbrook have caused that particular tract to have a cancer risk 64 times greater than that accepted by the EPA.

165. There is no adequate remedy at law sufficient to account for Defendants' continuing EtO emissions.

WHEREFORE, Plaintiff, Heather Schumacher, respectfully requests that this Court issue an injunction as follows:

    a. ordering Defendants to immediately cease using ethylene oxide in Sterigenics Willowbrook facility;

FILED DATE: 10/10/2018 5:27 PM   2018L011006

    b.  alternatively, ordering Defendants to modify its operations such that the cancer risk in Willowbrook resulting from ethylene oxide emissions is at or under the acceptable level of risk of 1 in 10 ten thousand (or 100 in 1 million).

Dated: October 10, 2018                Respectfully submitted

                                    HART McLAUGHLIN & ELDRIDGE, LLC

                By:    _____

                        Attorneys for Plaintiff

Antonio M. Romanucci
Bhavani Raveendran
Martin D. Gould
Bryce T. Hensley
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000 *telephone*
(312) 458-1004 *facsimile*
aromanucci@rblaw.net
braveendran@rblaw.net
mgould@rblaw.net
bhensley@rblaw.net

Steven A. Hart
Brian H. Eldridge
Jennifer M. Cascio
**HART MCLAUGHLIN & ELDRIDGE, LLC**
22 W. Washington Street, Suite 1600
Chicago, Illinois 60602
(312) 955-0545 telephone
(312) 971-9243 facsimile
shart@hmelegal.com
beldridge@hmelegal.com
jcascio@hmelegal.com

40

FILED DATE: 10/10/2018 5:27 PM   2018L011006

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

FILED
10/10/2018 5:27 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011006

HEATHER SCHUMACHER,                     )
                                        )
                                        )  Case No.   2018L011006
        Plaintiff,                      )
                                        )  **JURY DEMANDED**
v.                                      )
                                        )
STERIGENICS INTERNATIONAL,              )
INC.; STERIGENICS                       )
INTERNATIONAL LLC;                      )
STERIGENICS U.S., LLC;                  )
                                        )
        Defendants.                     )

## AFFIDAVIT REGARDING DAMAGES SOUGHT

Jennifer Cascio, being first duly sworn under oath, states as follows:

1.  I am one of the attorneys of record for the Plaintiff in this matter; and

2.  That the total money damages sought in this civil action exceeds $50,000.

FURTHER AFFIANT SAYETH NOT.

HART McLAUGHLIN & ELDRIDGE, LLC

By: _____
        ‾Attorneys for Plaintiff

[X]  Under penalties as provided by law pursuant to 735 ILCS 5/1-109 (1993), I certify that the statements set forth herein are true and correct.

FILED DATE: 10/10/2018 5:27 PM   2018L011006

Antonio M. Romanucci
Bhavani Raveendran
Martin D. Gould
Bryce T. Hensley
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000 *telephone*
(312) 458-1004 *facsimile*
aromanucci@rblaw.net
braveendran@rblaw.net
mgould@rblaw.net
bhensley@rblaw.net

Steven A. Hart
Brian H. Eldridge
Jennifer M. Cascio
**HART MCLAUGHLIN & ELDRIDGE, LLC**
22 W. Washington Street, Suite 1600
Chicago, Illinois  60602
(312) 955-0545 telephone
(312) 971-9243 facsimile
shart@hmelegal.com
beldridge@hmelegal.com
jcascio@hmelegal.com